UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:21-CR-00654-SEP |
| vs. | ) | |
| | ) | |
| **LINDA MATSON**, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT LINDA MATSON'S SENTENCING MEMORANDUM

COMES NOW Defendant Linda Matson, by and through her attorney, Luke A. Baumstark, and submits this memorandum to assist the Court in fashioning a sentence that is "sufficient, but not greater than necessary" to comply with the objectives of sentencing under 18 U.S.C. § 3553(a).  Based upon the factors outlined in this memorandum, Defendant requests that the Court vary downward from the Federal Sentencing Guideline Provisions presented in the Presentence Investigation Report ("PSR") in sentencing her.

The actions that have put Linda before this Court were the result of a misguided desire to help her family and people that she mistakenly regarded as such.  For better or worse (usually the former), this is an urge which has shaped much of Linda's life and has deeply impacted those around her.  A review of Linda's history and the circumstances surrounding the instant offense shows that this is something that Linda did, not who she is, and that punishing Linda with a prison sentence is both unnecessary and inappropriate.

#### How We Got Here

Linda's childhood was far from ideal.  Her parents divorced when she was a baby after her father discovered the abuse that Linda's mentally-ill mother was inflicting upon her (e.g. dipping

1

her into scalding hot water).  Unfortunately for Linda, rather than dodging a bullet, this turned out to be a move out of the frying pan and into the fire.  Linda's father married again, introducing into Linda's life a stepmother who was as physically and verbally abusive as Linda's mother had been. Linda's stepmother beat her regularly, at one point breaking a broomstick over Linda's back when she failed to move concrete blocks as directed at age 10.  *See* Letter of Robert Lough, Jr., attached hereto as Exhibit A.  To make matters worse in the face of this continuing abuse, a few years later Linda was sexually assaulted by classmates.  *See* PSR, ¶ 52.

The abuse Linda suffered only abated when she was forced out of the family home after becoming pregnant with her daughter, Jennifer, just prior to her senior year in high school.  *Id.* True to form for the people in Linda's life until that point, the man who impregnated Linda not only refused to take any responsibility for his actions, but also sought to legally compel Linda to have an abortion.  *Id.* at ¶ 53.  Luckily, his attempt failed.

Linda's difficulties, however, were far from over.  She struggled to support herself and Jennifer with no support from her parents.  Although Linda's sister Pamela was kind enough to allow Linda to live with her, Linda still had to juggle school and working as a waitress while also caring for a baby.  Perhaps motivated by the gross mistreatment that she and her siblings suffered in their abusive home, Linda persevered, however, and obtained her high school diploma and nursing degree.  Eventually, she married Lawrence Matson in the hopes of providing a stable home for Jennifer.  Even the verbally and emotionally abusive Lawrence seemed like a vast improvement over many of the relationships that Linda had experienced, and she remained with him for approximately 11 years before she had all she could take and the two divorced, but not before Linda had a second child, her son Steven.

2

Since divorcing Lawrence, Linda has continued to work as a nurse while providing what aid and assistance she could to her children, including helping Jennifer through college and graduate school.  *See* Letter from J. Johnson, attached hereto as Exhibit B.  In recent years, she has taken Steven (now an adult) into her home as she helped him to finally beat substance abuse issues which had plagued him over the preceding 15 years.  *Id.* at ¶ 54.  Since divorcing Lawrence, however, and after the experience that Linda had with Jennifer's father, she has not experienced romantic love in any significant way.

It is easy to see why, after a lifetime of mistreatment and an extended period without romantic partnership or even the hope thereof, Linda was the perfect mark for the scheme perpetrated against her and others by Bonmene Sibe, Ovuoke Frank Okiforo, and Trenice Hassel as they posed as J.D.  Linda was desperate for a connection with someone of her own age that she could build a life with – someone who would finally treat her right.  This desperation only grew in 2020 as the Covid-19 pandemic forced people across the world to retreat into their homes, and to connect and interact with one another even less often and less meaningfully than they already had been in the age of smart phones and social media.  It was exacerbated by Linda's recent trauma in having been forced to identify her brother Michael at the morgue after he was found deceased in his home in 2019.

It was this desperation that allowed Linda to rationalize and look past what many would consider to be "red flags" regarding the purported J.D. who was promising to give Linda things that she had been missing for her entire life.  According to Dr. Helen Fisher, anthropologist at Rutgers University, "when you're madly in love, not only are you feeling all of that energy, euphoria, focus, motivation, but activity in a certain little factory in the front of your brain, linked with decision-making and planning begins to *reduce* its activity, so you're really not thinking as

3

clearly." *See* CTV's W5: Exploring Canada's Costliest Romance Scam, available on YouTube at https://www.youtube.com/watch?v=v6OKnD9u6bY&t=696s.   Dr. Fisher goes on to explain, "This is important for fraud.  This brain region…near the front of the brain, is a region associated with negativity bias.  We are built to remember the negative.  But when you're madly in love, activity in this brain region reduces – and so you can overlook the negative.  You can deceive yourself." *Id.*  This is precisely what Linda did – and it led her to make some terrible decisions, one in particular that has brought her before this Court for sentencing.

Where We Are

Linda is before this Court for sentencing following her plea of guilty to a single count of Making a False Statement to a Federal Agent.  The Government initially charged her with Conspiracy to Commit Mail Fraud and Identity Theft.  It replaced both charges with the instant one in the face of a jury trial.  Nonetheless, the PSR refers to J.J., T.L., and D.L. as "victims," of Linda although none of them work for the Postal Inspector, and two of the three have submitted letters of support for Linda which are attached hereto.  *See* PSR at ¶ 23.  *See also* Exhibit B.  *See also* letter from T. Lough, attached hereto as Exhibit C.  Meanwhile, the Government has submitted letters from D.L., in which he rails against Linda, blaming her for his investment in the same scheme that cost Linda her retirement.  In other letters attached hereto, D.L. (a forensic accountant by trade) seeks payment from his niece J.J. and his brother T.L., threatening litigation if they do not give him upwards of 80 percent of the funds that Linda reimbursed to them[1].  *See* letter from D. L. to J.J. and T.L., attached hereto as Exhibit D.  This is consistent with Robert Lough. Jr.'s assessment of D.L.'s character in his letter, wherein he states, "For [D.L.] to be involved in this meant his sole motivation was greed."  *See* Exhibit A.

---

[1] The very same funds that Linda was seeking back from the Postal Inspector when she committed her crime.

Whatever D.L.'s motivation was, and whatever he could, and perhaps should, have discerned about the nature of the investments that he was making as a forensic accountant, however, these are not issues that should be addressed by this Court.  Linda has neither admitted nor been found guilty of any malfeasance with regard to D.L.  She was a victim of mail fraud, not a perpetrator thereof.  Further, as detailed in Defendant's Objection to the Presentence Investigation Report, even if the Court were to believe that Linda was responsible for D.L.'s losses, they cannot be considered relevant conduct for purposes of assessing Linda's sentence under the United States Sentencing Guidelines.  *See generally* Doc. 63.  Finally, and perhaps most importantly, D.L. will have his chance to pursue his claims in [*D.L.*] *v. Linda Lough Matson,* Case No. 2020-4673-CI, the lawsuit that he has filed against Linda in Pinellas County, Florida.  That lawsuit is focused solely on what went on between Linda and D.L. regarding the latter's investments and is therefore the more appropriate and better-suited venue to determine whether Linda bears any responsibility for D.L.'s decisions.

Similar Cases

Unfortunately, Linda is far from being the only woman to fall victim to a romance scam. This District has recently heard similar cases of women charged with committing crimes (albeit ones far more egregious than Linda's) while being victimized by romance scams.  *United States of America v. Wende Anne Terrill*, No. 4:17-CR-00480 is one such case.  Ms. Terrill's crime was quite a bit worse than Linda's in that she stole $200,000 from her employer to contribute to the scam that deceived her.  *See* Case No. 4:17-CR-00480, Doc. 130.  Ms. Terrill also never took responsibility for what she had done.  Even after losing at jury trial, however, Judge Sippel gave Ms. Terrill a below-guidelines sentence of only one year and one day of incarceration.  *Id.*

5

Another such case is *United States of America v. Glenda Seim*, No. 4:21-CR-00202.  Like Ms. Terill, Ms. Seim's crimes far exceeded the scope of Linda's.  Ms. Seim opened bank accounts on behalf of her scammers that they used to transfer money from other victims.  *See* Case No. 4:21-CR-00202, Doc. 40.  She also helped them to get unemployment insurance in the names of three of their victims and attempted to help them set up a company, ostensibly to launder the proceeds of their fraud.  *Id.*  She pawned illegally-obtained electronics that he scammers mailed to her, funneling the proceeds from these sales back to them.  *Id.*  Perhaps most importantly, however, and unlike Linda, Ms. Seim herself profited by keeping a percentage of the money that she directed to her scammers.  *Id.*  Like Linda, Ms. Seim was lonely and vulnerable enough that she looked past warnings that she was being scammed, though she did so many more times than Linda did (her Guilty Plea Agreement suggests that there were at least six such warnings from law enforcement and various banks and financial institutions), and for a much longer period (she remained involved for approximately seven years).  *Id.*  Despite all of this, however, Judge Clark sentenced Ms. Seim to a term of probation lasting five years.  *See* Case No. 4:21-CR-00202, Doc. 67.

## Prayer for Relief

The attached sentencing letters show that Linda is a force for good in her community.  Andy Macy details Linda's volunteer work with the Mobile Food Pantry.  *See* letter from A. Macy, attached hereto as Exhibit E.  Penny Roberson, whose boyfriend Linda cared for as a nurse describes her as a "good person and friend."  *See* letter from P. Roberson, attached hereto as Exhibit F.  Raymond Shook explains that Linda stepped up to help out the With God's Grace Food Pantry when the Dayton, Ohio, area was hit by tornados in 2019.  *See* letter from R. Shook, attached hereto as Exhibit G.  Amanda Harris states that Linda has brought boxes of food and other essential

items to her and her children for five years.  *See* letter from A. Harris, attached hereto as Exhibit H.  The list goes on and on.

The threat of going to prison, loss of her retirement money and publication of the fact that she was duped in such a personal way have all weighed heavily on Linda over the past 30 months or so.  She has lost sleep.  She has lost her peace of mind and become depressed, to the point where she considered suicide for the first time in her life.  Linda's friends and neighbors have been accosted by strangers inquiring as to how they know her.  *See* letter from A. Shamburger, attached hereto as Exhibit I.  The Government named Linda in an interview given to National Public Radio in which it detailed the allegations forming the basis for then-pending charges against her.  *See* audio recorded interview accompanying article titled "How a Kirkwood Octogenarian Became an International Money Mule" and available at https://news.stlpublicradio.org/show/st-louis-on-the-air/2022-02-24/how-a-kirkwood-octogenarian-became-an-international-money-mule.    (Mention on Linda is approximately eight minutes into the interview.)  Despite this, Linda could not stop.  Unable to find work in her chosen field because of the charges she faced, Linda has been reduced to cleaning houses, mowing lawns and selling items out of her house to make ends meet.

To say that this period has been stressful for Linda would be an understatement.  Living under the threat of incarceration is not something that Linda ever wants to go through again.  She will do everything that she can to ensure that she never has to.  Linda has already been deterred from engaging in future criminal conduct as contemplated in 18 USC § 3553(a)(2)(B).

There is no need to protect the public from Linda Matson.  Her crime was non-violent and the product of a perfect storm of events unlikely to ever occur again.  At 62 years old, Linda is well past her highest-risk years without accruing any criminal history, other than a municipal tax

case resulting in a fine of $25.  Accordingly, there is little for the Court to consider as to 18 USC § 3553(a)(2)(C).

Linda's Presentence Investigation Report shows no barriers to employment.  *See* Presentence Investigation Report, ¶ 68.  Linda has never used illegal drugs.  *Id.* at ¶ 63.  Although we all have room for continued improvement, it is difficult to imagine that the Government's resources would be well spent on providing educational or vocational training or drug treatment to someone like Linda, especially from within the Bureau of Prisons.

A two-year term of probation would adequately reflect the seriousness of Linda's offense and provide a just punishment for it.  It would usher her into retirement age under the watchful eye of the Court, and with its guidance to keep her on the right path.  Linda has shown that she can comply with conditions imposed by the Court while bond.  A sentence of prison time will not serve any of the ends contemplated by 18 USC § 3553(a)(2).

WHEREFORE, Defendant respectfully requests that the Court sentence her to a term of probation with such terms as are deemed appropriate by the Court after careful consideration of Defendant's lack of any significant history of criminal activity and substance abuse.

Respectfully submitted,

*/s/ Luke A. Baumstark*
Luke A. Baumstark  #56344
THE BAUMSTARK FIRM, LLC
815 Geyer Avenue
St. Louis, MO  63104
(314) 492-6290
(314) 492-6348 FAX
luke@baumstarkfirm.com

**Attorney for Defendant**
**Linda Matson**

8

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on the 9th day of November, 2022, this document was filed with the court via the CM/ECF system which will send notice to all parties of record.

_____/s/ *Luke A. Baumstark*___