**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-cr-00654-SEP |
| | ) |
| LINDA MATSON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion for Release Pending Appeal, Doc. [106]. For the reasons set forth below, Defendant's motion is denied.

### FACTS AND BACKGROUND

On Monday, March 13, 2023, Defendant moved that she should be allowed to remain on bond[1] pending the resolution of the appeal of her sentence because Defense counsel had "become aware of" a case, *United States v. O'Kane*, 155 F.3d 969 (8th Cir. 1998), which "confirms that the appropriate Total Offense Level" in Defendant's case "should have been 4, rather than 24."[2] Doc. [106] ¶ 8. Although it does not appear in the briefing, the Court was later made aware that Defendant's assigned date to report to the Bureau of Prisons is March 23, 2023—ten days after the motion was filed.

On Wednesday, March 15, 2023, the United States responded in opposition to Defendant's motion. Doc. [107]. The Government's response argued that "Defendant's appellate waiver forecloses her claim that the issue she seeks to raise on appeal presents a substantial question of fact or law." *See* Doc. [107] at 5-7. Unfortunately, the Government

---

[1] Defendant's motion erroneously states that she was "allowed to remain out on her original bond, the Court having found exceptional reasons why her detention would be inappropriate pursuant to 18 U.S.C. § 3145." Doc. [106] ¶ 4. In fact, the Court applied 18 U.S.C. § 3143(a)(1), and Ms. Matson was permitted to remain on bond because the Court found by clear and convincing evidence that she was not a flight risk or a danger to the community. *See* Doc. [116] at 115:13-116:3. The Court made no finding under 18 U.S.C. § 3145.

[2] The total offense level calculated by the Court at Defendant's sentencing hearing was actually 22, not 24, *see* Doc. [98] at 80, but the Court perceives no way in which that could affect the substance of Defendant's legal argument and so disregards it for the purposes of this order.

1

relied exclusively on district court cases from outside of the Eighth Circuit for that proposition, making its authoritativeness in this Court far from obvious. And the Government neglected to address Defendant's substantive legal argument for reversal of this Court's total offense level calculation based on *O'Kane*.

Given that the parties had so far been "talking past each other," that neither had come close to providing a dispositive argument on the disputed issue, and that time was of the essence, the Court required each party to provide a brief of no longer than five pages responding directly to the other's argument no later than 5:00 p.m. on Friday, March 17, 2023. *See* Doc. [108].

Despite submitting a supplemental brief that was twice as long as the Court allowed, the Government still provided no significant analysis of Defendant's argument about the application of Section 3D1.2 of the United States Sentencing Guidelines. *See* Doc. [110] at 8-9. Its discussion of *the only issue it was asked to brief* took up barely half a page of its 10-page brief, and it did nothing but state the Government's alternative interpretation of *O'Kane*, without so much as a citation to a single case supporting that interpretation or anything else that might assist the Court in evaluating which interpretation is consistent with other decisions of the Eighth Circuit or other district courts.

In return, Defendant's supplemental brief primarily restated her substantive argument about the application of *United States v. O'Kane*, also without citation to any subsequent appellate or district court case discussing or applying that decision. And to the extent Defendant bothered to address the Government's waiver argument, she relied exclusively on general principles from Eighth Circuit precedents and, like the Government, neglected to cite a single case that might help the Court understand how such principles have been applied in a case bearing any resemblance to this one.

What follows, therefore, is largely the result of the Court's own survey of the case law and the docket.[3]

### LEGAL STANDARD

Under 18 U.S.C. § 3143(b), the Court is required to detain a person who has been sentenced to imprisonment and who has filed an appeal *unless* it finds:

---

[3] This case is a good example of something advocates should always keep in mind: that, in addition to costing the Court scarce time and resources, inadequate advocacy also delays its rulings, which alone can have tremendously important consequences for their clients.

2

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

(i) reversal,

(ii) an order for a new trial,

(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1).

## DISCUSSION

Defendant argues that the Court should enter an order allowing her to remain on bond during the pendency of her appeal because her counsel "has discovered legal precedent that . . . confirms that the appropriate Total Offense Level should have been 4, rather than 24." Doc. [106] ¶ 8. Although the motion does not make it explicit, the Court takes Defense counsel to be arguing that, based on the newly discovered precedent, Defendant's appeal "raises a substantial question of law or fact likely to result in" reversal or resentencing, such that she might be eligible to remain on bond during the pendency of her appeal under 18 U.S.C. § 3143(b)(1).

The substance of Defendant's argument is that under *United States v. O'Kane*, 155 F.3d 969 (8th Cir. 1998), the Court should not have found that Ms. Matson's admitted-but-uncharged fraudulent conduct in furtherance of a romance scam was relevant conduct to the charge to which she pled guilty, which counsel labels "making a false statement."[4] Doc. [106] at 3.

---

[4] According to the Superseding Information, Defendant:

> did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation to a United States Postal Inspector, to-wit: defendant LINDA MATSON stated that she needed an expedited return of funds seized by the United States Postal Inspection Service relative to a romance fraud investigation to assist her family in finding her missing niece M.B., when in truth and fact as LINDA MATSON then and there well knew, M.B. was not her niece and she sought the expedited return of the seized funds for reasons she sought to conceal from law enforcement officials.

Doc. [50]. The statutory provision that Defendant admitted to violating prohibits "knowingly and willfully . . . mak[ing] any materially false, fictitious, or fraudulent statement or representation . . . in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States . . . ." 18 U.S.C. § 1001(a)(2).

The Court's decision to treat the uncharged conduct as "relevant conduct"—which counsel contested at length in a nearly-four-hour sentencing hearing after briefing the issue multiple times over the span of many months, *see* Docs. [63], [82], [98] at 11-48—was based on Section 1B1.3 of the United States Sentencing Guidelines, which states in relevant part that the Court shall treat as relevant conduct:

> solely **with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts**, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction . . . .

U.S.S.G. § 1B1.3(a)(2) (emphasis added). The parties agreed in the Guilty Plea Agreement that the base offense level for the convicted offense is 6, as found in Section 2B1.1(a), which is the first subsection of the section of the United States Sentencing Guidelines covering "Larceny; Embezzlement, and other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States." *See* U.S.S.G. § 2B1.1. Defendant does not contest that classification, so the Court takes it to still be undisputed that the offense of conviction falls under Section 2B1.1. And Section 3D1.2 of the Guidelines states, in relevant part:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> …
>
> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.
>
> Offenses covered by the following guidelines are to be grouped under this subsection:
>
> . . . § 2B1.1 . . . .

U.S.S.G. § 3D1.2.

On a straightforward reading of the text of the Guidelines, then, an offense covered by § 2B1.1—such as the one to which Defendant pled guilty—qualifies as an "offense[] of a character for which § 3D1.2(d) would require grouping of multiple counts," U.S.S.G. § 1B1.3(a)(2), and thus relevant conduct as to such an offense includes "all acts and omissions

4

described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.*  Accordingly, on finding that Defendant's other acts of "deception in furtherance of the fraud" were part of the same course of conduct as the fraudulent statement underlying the charge of conviction, the Court included those acts as "relevant conduct" for the purpose of determining specific offense characteristics and adjustments to Defendant's base offense level, as the Court is instructed to do by Section 1B1.3.  Doc. [98] at 46:1-9; *see also United States v. Killgo*, 397 F.3d 628, 630-31 (8th Cir. 2005) ("Multiple fraud offenses are grouped under § 3D1.2(d), so relevant conduct for purposes of sentencing . . . includes all fraudulent acts or omissions 'that were part of the same course of conduct or common scheme or plan' as the offense of conviction.").

According to Defendant, *O'Kane* shows that the Court should not have treated the offense of conviction and the admitted-but-uncharged fraudulent conduct as subject to grouping under Section 3D1.2 because their offense levels are not affected by the amount of loss in the same way:

> [*O'Kane*], like this [case], involved the grouping of counts or offenses for purposes of determining relevant conduct using the rule about counts involving "substantially the same harm" from section 3D1.2 of the United States Sentencing Guidelines. Also, like this case, *O'Kane* involved **one count** (money laundering in that case, making a false statement in this one) ***for which the amount of loss did not affect the offense level***, and **one** (mail fraud in both cases) ***for which it did***. The Court in *O'Kane* held that, because of this difference in what determined the Total Offense Level for these different counts, they could not be grouped together using Section 3D1.2.  It stated:
>
>> The offense level for money laundering is not "determined largely on the basis of the total amount of harm or loss;" rather it is determined largely by the eleven level higher starting *base* offense level. Therefore, grouping under Section 3D1.2(d), as argued for by the government, is not appropriate.

Doc. [106] ¶ 9 (emphasis added) (quoting *United States v. O'Kane*, 155 F.3d 969, 974 (8th Cir. 1998) (citing *United States v. Kneeland,* 148 F.3d 6, 15-16 (1st Cir. 1998))).

Defendant's argument is based on a misreading of *O'Kane* that is unsupported by subsequent Eighth Circuit case law.  *O'Kane* found that fraud and money laundering counts could not be grouped because "fraud and money laundering are not so closely related as to allow loss and value grouping under § 3D1.2(d)." *O'Kane*, 155 F.3d at 973 (quoting *United States v. Hildebrand,* 152 F.3d 756, 763 (8th Cir.1998)).  That conclusion was based on the fact that the

5

two *different* sections of the Sentencing Guidelines governing those offenses operated differently: Money laundering's offense level depended to a much greater degree on the base offense level, whereas fraud's offense level was highly dependent on the amount of loss. *Id.* at 974 (quoting *Hildebrand*, 152 F.3d at 763 ("[B]ecause the base offense levels for money laundering are much higher than the base offense level for fraud, . . . it is wrong to assume that the Sentencing Commission intended to equate the amount of fraud loss with the value of money laundered for every fraudulent scheme that includes some form of money laundering.")); *see also generally United States v. Napoli*, 179 F.3d 1, 10-13 (2d Cir. 1999). Because of the incommensurability of their offense level calculations, the Eighth Circuit found that O'Kane's fraud and money laundering counts could not be grouped under Section 3D1.2(d).

In this case, there is no incommensurability between the offense level calculation for Defendant's charge of conviction and the offense level calculation for any other fraudulent conduct. Defendant's charge of conviction falls under the same section of the United States Sentencing Guidelines as all other offenses involving "Fraud and Deceit," Section 2B1.1. That section treats her offense the same way it treats all other fraud offenses, by starting with a relatively low base offense level and then, if the loss exceeds $6,500,[5] enhancing that base offense level according to the amount of loss. *See* U.S.S.G. §§ 2B1.1(a), (b)(1). Although the amount of loss attributable to Defendant's offense of conviction might be assessed as $0 if that conduct were considered in isolation,[6] that would not disqualify the offense from being grouped with other fraud counts under Section 3D1.2(d), because the total offense level for the charge would still be assessed under Section 2B1.1, under which the offense level is "determined largely on the basis of the total amount of harm or loss."[7] Unlike in *O'Kane*, there is no qualitative

---

[5] The fact that Section 2B1.1(b)(1) increases the offense level only for a loss exceeding $6,500 highlights the absurdity of Defendant's proposed interpretation of *O'Kane*. If the ability to group fraud claims under Section 3D1.2(d) turned not on whether their offense levels are all calculated under Section 2B1.1, which takes loss substantially into account, but rather on whether the offense level for a *particular* fraud offense actually *has been* increased due to the amount of loss (as Defendant proposes), then a defendant could theoretically defraud 100 people of $6,000 each, and those counts could not be grouped with each other or any other fraud offenses under Section 3D1.2(d) because none of their offense levels would have been enhanced due to the amount of loss.

[6] The Court makes no finding about what the amount of loss would be in that counterfactual scenario.

[7] The fact that the amount of loss makes such a substantial difference to Defendant's offense level is precisely why the differential between the parties' estimated total offense levels in this case is so wide (and, as such, also presumably why Defendant is so determined to persuade this Court that her admitted-

6

difference between the offense level calculation for Defendant's offense of conviction and how offense levels would be calculated for her other fraudulent conduct, such that all of her acts of fraud could not grouped under Section 3D1.2.

*O'Kane* itself contradicts Defendant's argument, noting in the very paragraph Defendant relies on that "it is clear that several separate money laundering counts could properly be grouped together under (d), *as could several fraud counts*." *O'Kane*, 155 F.3d at 974 (emphasis added). Research into how *O'Kane* has been applied also confirms the Court's reading. The reasoning of *O'Kane* has been cited repeatedly in the specific context of the possible grouping of fraud and money laundering counts. *See, e.g.*, *United States v. Green*, 225 F.3d 955 (8th Cir. 2000) (wire fraud and money laundering); *United States v. Agboola*, 417 F.3d 860 (8th Cir. 2005) (fraud and money laundering); *United States v. Pennington*, 168 F.3d 1060 (8th Cir. 1999) (aiding and abetting mail fraud and aiding and abetting money laundering). And although this motion has been considered under significant time constraints and without the benefit of case law research on this issue from either party, the Court did search for a case applying *O'Kane* to two charges of different kinds (or magnitudes) of fraud, or to any two offenses whose offense levels would be calculated under the same section of the United States Sentencing Guidelines, and it found none.

Given that Defendant has cited no case law in support of her interpretation of a 25-year-old precedent, and the Court has been able to find none, the Court cannot find that Defendant's appeal "raises a substantial question of law or fact likely to result in" reversal or resentencing. 18 U.S.C. § 3143(b)(1). Therefore, her motion to remain on bond pending appeal is denied.[8]

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Release Pending Appeal, Doc. [106], is **DENIED**.

Dated this 22nd day of March, 2023.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

---

but-uncharged fraudulent conduct is not relevant). The amount of loss associated with the admitted-but-uncharged fraudulent conduct accounts for fully 14 of the disputed 18 levels.

[8] Because the weakness of her substantive claim is dispositive of Defendant's motion, the Court does not reach the other issues briefed by the parties, including whether Defendant has waived her right to raise this issue on appeal either by explicit waiver or by failing to raise the argument to the trial court.